UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GARY KING, Attorney General,
State of New Mexico ex rel.,

    Plaintiff,

v.                                              No. 13-cv-504 RHS/KBM

HSBC Bank Nevada, N.A.,
HSBC Card Services, Inc., and
HSBC Bank USA, NA,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendants HSBC Bank Nevada, N.A., HSBC Card Services, Inc., and HSBC Bank USA, N.A.'s Memorandum of Law in Support of Defendants' Motion to Dismiss Consumer-Relief Claims Pursuant To Prior Class Action Settlement (Doc. 23) filed on August 7, 2013. The Court, having considered the Motion and Memorandum (Doc. 23), Response (Doc. 24), Reply (Doc. 34) and applicable legal authority, finds that the Motion should be granted.

## FACTUAL BACKGROUND

This case arises from Defendants' marketing, selling and administering of fee-based ancillary products and services provided to New Mexico consumers who have been issued credit cards by Defendants. New Mexico Attorney General Gary King brought this suit as an enforcement action alleging unfair trade practices pursuant to NMSA §§ 57-12-8 and 57-12-15; as well as violation of Regulation Z, promulgated under the Dodd-Frank Act, 12 U.S.C. § 5552(a)(2)(B). Plaintiff asserts that these claims transpired from Defendants' sale of "payment protection plans" which cancel or suspend a credit card holder's obligation to make payments on

his or her outstanding accounts under certain circumstances. Plaintiff also asserts that these claims arise from Defendants' sale of other "ancillary" services including Identity Theft Protection, Wallet Protection and Credit Score Tracker[1] (Doc. 14 at 7).

Defendant contends that these claims are barred pursuant to a Judgment and Final Order entered by the Eastern District of Pennsylvania in connection with the class action settlement resolving Esslinger v. HSBC Bank Nevada, N.A., No. 10-cv-3213 BMS (E.D. Pa). The Complaint filed in Esslinger alleged that Defendants used unfair and deceptive practices to market payment protection plans, enroll customers in payment protection plans without their informed consent, and enroll customers who were ineligible for plan benefits. The Esslinger Plaintiffs sought monetary damages and restitution under various state consumer protection statutes, including the New Mexico Unfair Practices Act ("NMUPA"), on behalf of consumers across the country who had enrolled in Defendants' payment protection plans. In January 2012, settlement was reached and pursuant to the terms of the Settlement Agreement, class members released any and all claims against Defendants relating to its payment protection plans, including claims arising under state or federal consumer protection and/or unfair practices acts, such as the NMUPA (Doc. 23-2 at 17). After preliminary approval of the settlement, HSBC provided notice of settlement to more than 22 million individuals enrolled in HSBC's payment protection plan. The Esslinger Court entered the Final Order on November 20, 2012, approving the settlement, incorporating the Settlement Agreement, and enjoining class members and any one acting on their behalf from raising the released claims in a subsequent lawsuit (Doc. 23-2 at 8). Objections

---

[1] The Complaint defines the other fee-based ancillary services as follows: (1) Identity Theft Protection is a product that purports to monitor consumers' credit scores for indicia of identity theft and will alert the enrollees if something suspicious happens to their credit scores. (2)Wallet Protection is a service that if the consumers' wallet is lost or stolen, HSBC will contact the issuers of all of the consumer's credit cards to cancel the lost or stolen cards. (3) Credit Score Tracker is a product that provides consumers with copies of their credit report(s) and tools that allow them to track their credit score on a daily basis.

to the settlement were filed by Attorneys General of West Virginia, Mississippi and Hawaii and were denied because they lacked standing. Esslinger v. HSBC Bank Nevada, N.A., 2012 WL 5866074, *7 n.2 (E.D. Pa. Nov. 20, 2012). The Esslinger Court stated, in a footnote, that Attorneys General were not precluded from raising criminal claims or proceeding with regulatory actions. Id. The Court further stated that any claims raised on behalf of consumers were barred by the settlement:

> the AGs may continue to bring claims belonging to their respective states, such as state criminal and regulatory actions. However, the AGs are precluded from bringing claims 'in a de facto or de jure representative capacity on behalf of the plaintiffs' in this class action, because doing so would allow class members to double recover. . . . Class members were adequately represented and given an opportunity to opt out of the settlement. Allowing the Class members to recover under both this settlement and future AG-driven litigations on the basis of the same facts would run counter to well established class action principles and would discourage settlements, which are strongly favored.

Id. at *7 Fn. 2.

The settlement is now final and Esslinger v. HSBC is closed (10-cv-3212 BMS (E.D. Pa)).

Defendants assert that Plaintiff seeks monetary relief, on behalf of the very same consumers who were Esslinger class members, for violations of the same statutes at issue (Doc. 23). Additionally, Defendants contend that they do not seek to bar penalties or injunctive relief claims (Doc. 34 at 11).

LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."

Dubbs v. Head Start, Inc., 336 F.3d 1194, 1201 (10th Cir. 2003). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. Id. at 679.

Res judicata may be raised in a motion to dismiss under Fed. R. Civ. P 12(b)(6). Miller v. Shell Oil Co., 345 F.2d 891 (10th Cir. 1965). "Under res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in the prior action." Wilkes v. Wyoming Dep't of Emp't, 314 F.3d 501, 504–05 (10th Cir.2002) (citing Stasky v. Paramount Commc'ns, Inc., 7 F.3d 1464 (10th Cir. 1993)). Res judicata requires: (1) a judgment on the merits in the earlier action; (2) identity of the parties or privies in the two suits; and (3) identity of the cause of action in both suits. Yapp v. Excel Corp., 186 F.3d 1222, 1227 (10th Cir. 1999). When these elements are met, "res judicata is appropriate unless the party seeking to avoid preclusion did not have a full and fair opportunity to litigate the claim in the prior suit." Mactec, Inc. v. Gorelick, 127 F.3d 821, 831 (10th Cir. 2005) (citing Yapp, 186 F.3d at 1226 n.4). "The doctrine of claim preclusion serves the fundamental policies of finality, judicial economy, preventing repetitive litigation and forum-shopping." In re Davis, 188 Fed.Appx. 671, 675 (10th Cir. 2006) (citing Plotner v. AT&T Corp., 224 F.3d 1161, 1168 (10th Cir. 2000) internal quotations omitted). Generally, federal courts "apply federal law to the res judicata issue in successive diversity actions." Lowell Staats

4

Min Co., Inc. v. Philadelphia Elec. Co., 878 F.2d 1271, 1274 (10th Cir. 1989) (citing Petromanagement Corp. v. Acme–Thomas Joint Venture, 835 F.2d 1329, 1333 (10th Cir. 1988).

ANALYSIS

Defendants contend that all monetary claims asserted by Plaintiff, on behalf of consumers, are barred by the Judgment and Final order in Esslinger (Doc. 23).  Plaintiff argues that the doctrine of res judicata is inapplicable because (1) the New Mexico Attorney General and/or the State of New Mexico were not parties or in privity with any parties in Esslinger, (2) the cause of action is not identical to the causes raised in Esslinger, and (3) the Attorney General did not have the opportunity to litigate the State of New Mexico's claims in Esslinger (Doc. 24). Plaintiff does not dispute that there was a judgment on the merits in the Esslinger suit. Moreover, Plaintiff repeatedly argues that this is an enforcement action, although the Amended Complaint appears to also seek monetary relief for New Mexico consumers (Doc. 24, Doc. 14). Plaintiff seeks monetary relief on behalf of New Mexico consumers in addition to seeking civil penalties for violation of the NMUPA and Regulation Z.   The Court considers the enumerated factors in determining whether Plaintiff's claims for monetary compensation on behalf of consumers will be dismissed pursuant to res judicata.  Yapp, 186 F.3d at 1227.

I.
Judgment On The Merits In The Prior Action

Res judicata requires that a judgment on the merits in the earlier action.  Id. at 1227. Neither party disputes the fact that the judgment in Esslinger is a final judgment.  Court-approved settlement agreements are generally considered final judgments for the purposes of res judicata.  Hoxworth v. Blinder, 74 F.3d 205, 208 (10th Cir. 1996).  Therefore, the Court finds that this element has been satisfied.

II.
Identity Of The Parties Or Privity In The Two Suits

Defendants assert that Plaintiff is in privity with New Mexico consumers to the extent they were members of the Esslinger settlement class. Defendants contend that Rex Inc. v. Manufactured Hous. Comm., 119 N.M. 500 (1995) supports their contention that Plaintiff is barred from seeking damages for New Mexico consumers who previously settled their claims. Plaintiff argues that neither the Attorney General nor the State of New Mexico are in privity with New Mexico consumers and therefore, are not precluded by res judicata from asserting the claims raised herein (Doc. 24). In fact, Plaintiff asserts that this is an enforcement action to protect the States' sovereign interest in remedying violations of the NMUPA and Dodd-Frank Act (Doc. 24 at 9). Plaintiff argues that Defendants' reliance on Rex, Inc. is misplaced and that the New Mexico Supreme Court held that the state agency was not in privity where the claim was brought to vindicate the state's public interest (Doc. 24 at 12). More accurately stated, the holding in Rex, Inc. supports a conclusion that governmental entities are in privity with private plaintiffs where the government brings an enforcement action wherein it seeks monetary relief payable to individuals after those same individuals litigated and recovered damages for the identical violations. Rex, Inc., 119 N.M. at 508-510. Courts recognize a distinction between public interest versus private benefit when examining whether a governmental agency is in privity with an individual claimant to determine the applicability of res judicata. Id. at 508-510. It is undisputed that when a state agency brings a claim pursuant to a statutory scheme in order to vindicate the state's public interest, it is not in privity with consumers. Id. Although Plaintiff argues otherwise, the Amended Complaint (Doc. 14 at 23, 25-27) demonstrates that Plaintiff is seeking monetary recovery on behalf of New Mexico consumers, not only pursuing a regulatory action to vindicate the state's public interest. Based

on the foregoing, the Court finds that Plaintiff is in privity with New Mexico consumers who were settlement class members and therefore, parties to the Esslinger litigation for the purposes of pursuing claims for compensation on behalf of individual class members.

### III.
### Same Cause Of Action

Defendants assert that there is "an identity of the causes of action" (Doc. 23 at 9) or that the Plaintiff's suit is based on the same cause of action as the Esslinger lawsuit.  They claim that "a comparison of the Esslinger Complaint and the Attorney General's Amended Complaint confirms that the claims arise out of the same transaction or series of connected transactions." Id.  Defendants contend that both complaints allege "wrongdoing based on common factual allegation challenging [Defendants'] marketing and sales practices" of payment protection plans. Id. at 10.  Plaintiff argues that the present lawsuit is not based on the same set of facts (Doc. 24 at 15).  Plaintiff contends that the Esslinger case sought relief for claims regarding Defendants' payment protection product while the Amended Complaint (Doc. 24 at 15) seeks relief based on all ancillary products "including but not limited to the Payment Protection product."   Plaintiff further contends that the two causes of action he raised are for enforcement of the enumerated provisions of the NMUPA and Regulation Z and could not have been raised in Esslinger because only the Attorney General has standing to raise these claims.  Id.

The Tenth Circuit employs the transactional approach of the Restatement (Second) of Judgments to determine what claims constitute identity of the causes of action.  Yapp, 186 F.3d at 1227 (citing Petromanagement Corp. v. Acme–Thomas Joint Venture, 835 F.2d 1329, 1335–36 (10th Cir.1988)).  Under this approach, claims "arising out of the same transaction, or series of connected transactions as a previous suit are precluded."  Id.  (quoting Restatement (Second) of Judgments § 24 (1982)).  The Court must determine what constitutes the same transaction or

7

series of transactions "pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Id. (quoting Restatement (Second) of Judgments § 24). "Under the transactional test, a claim should not be precluded merely because it is based on facts that arose prior to the entry of judgment in the previous action." Hatch v. Boulder Town Council, 471 F.3d 1142, 1149 (10th Cir. 2006); see also Mitchell v. City of Moore, 218 F.3d 1190, 1202 (10th Cir.2000) ("stating in dicta we agree with those courts holding the doctrine of claim preclusion does not necessarily bar plaintiffs from litigating claims based on conduct that occurred after the initial complaint was filed in the previous suit"). Parties cannot avoid the preclusive effect of res judicata by presenting claims already litigated in new legal theories. Plotner, 224 F.3d at 1170.

    The Court is not persuaded by Plaintiff's argument that the present lawsuit is not based on the same cause of action as Esslinger. The Esslinger Complaint alleged unfair trade practices in the marketing and selling of an ancillary product, "payment protection plans." It appears to the Court that the Esslinger Complaint raised consumer claims, although on a broader basis, under each States' Unfair Practices Act and Regulation Z. The Esslinger Plaintiffs had the opportunity to raise claims in connection with all of these ancillary services but failed to do so. The Esslinger Settlement resolved the claims of consumers who utilized Defendants' services but any criminal and regulatory actions remain available to any State's Attorney General. There is nothing in Plaintiff's Complaint to suggest that the action to recover monetary judgment for the benefit of New Mexico consumers involves new, independent claims that were "not part of the previous transactions, [and] based on new facts." Hernandez v. Asset Acceptance, LLC, 2013 WL 4835379, *7 (D. Colo) (quoting Storey v. Cello Holdings, LLC, 347 F.3d 370, 384 (2d Cir.

2003)). In fact, the claims as plead, arise from the same transaction as the Esslinger claims. Moreover, the relief sought seeks recovery of the same fees that were awarded in the Esslinger Settlement. Therefore, the Court finds that the issues raised herein involve the same consumer relief claims settled in Esslinger.

## IV.
### Full And Fair Opportunity To Litigate In Prior Action

Defendants assert that Plaintiff is in privity with the New Mexico consumers who were class members in Esslinger (Doc. 23). Plaintiff argues that Plaintiff was not a party to the Esslinger litigation and had no opportunity to participate in the litigation (Doc. 24 at 17).

Sometimes courts reference "a full and fair opportunity to litigate the claim in the prior suit" as a requirement of res judicata. Nwosun v. General Mills Restaurants, Inc., 124 F.3d 1255, 1257 (10th Cir. 1997) (citing Sil-Flo, Inc. SFHC, Inc. 917 F.2d 1507, 1520 (10th Cir. 1990)). However, res judicata does not require that the Plaintiff was a party to the previous action to have had an opportunity to fully and fairly litigate any claims, only that Plaintiff's interests were represented in the prior litigation. Kinslow v. Ratzlaff, 158 F.3d 1104, 1107 (10th Cir. 1998). In making the determination about full and fair opportunity to litigate, the Court considers "any procedural limitations, the party's incentive to fully litigated the claim, and whether effective litigation was limited by the nature or the relationship of the parties. Nwosun, 124 F.3d at 1257. Furthermore, any previously unlitigated claims that could and should have been raised in the previous litigation are res judicata. Plotner, 224 F.3d at 1170.

There is no question that Plaintiff was not a party to the Esslinger litigation. Additionally, any potential criminal and regulatory actions available to Plaintiff were not litigated in Esslinger. Esslinger, 2012 WL 5866074, at *7 Fn.2. However, New Mexico consumers had the opportunity to fully and fairly litigate their consumer claims. Consumers

across the United States received notice of the proposed settlement.  Id.  Moreover, New Mexico consumers were included as class members and had the opportunity to object to the settlement. The record in the Esslinger litigation reflects that the District Court for the Eastern District of Pennsylvania considered all objections that were raised and found that there was not any valid basis to reject the settlement.  Id.

As discussed above, this Court determined that Plaintiff was in privity with New Mexico consumers who were class members in the Esslinger litigation.  The Esslinger Court addressed the preclusion of Attorneys General from bringing claims "in a de facto or de jure representative capacity on behalf of the plaintiffs … because doing so would allow Class members to double recover" Esslinger, 2012 WL 5866074, at *7 Fn.2.  For these reasons, the Court finds that there was a full and fair opportunity to litigate these claims and concludes that Plaintiff is precluded from litigating any claims against HSBC to recover any monetary relief for New Mexico consumers.

The Court finds that all of the elements of res judicata as set forth in Yapp have been satisfied.  Plaintiff is barred from bringing any claims for compensation on behalf of consumers who were class members in the Esslinger litigation.

IT IS THEREFORE ORDERED that the Memorandum of Law in Support of Defendants' Motion to Dismiss Consumer-Relief Claims Pursuant to Prior Class Action Settlement (Doc. 23) is hereby GRANTED.

_____
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE